IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOHN KINLAW,

     Plaintiff,

v.                                            Civil Action No. 3:17-cv-772

DR. CHARLES NWAOKOCHA,
et al.,

     Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on the Defendants' MOTION TO
EXCLUDE TESTIMONY CONTAINED IN THE AMENDED EXPERT REPORT OF MICHAEL
J. KATZ, MD, OR, IN THE ALTERNATIVE, MOTION TO STRIKE THE AMENDED
EXPERT REPORT OF MICHAEL J. KATZ, MD (ECF No. 52) (the "Motion to
Exclude"); the DEFENDANTS' RENEWED MOTION TO EXCLUDE TESTIMONY OF
PLAINTIFF'S STANDARD OF CARE AND CAUSATION EXPERT, MICHAEL J. KATZ
(ECF No. 76) (the "Daubert Motion"); and the DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT (ECF No. 73) (collectively, the "Motions").
For the reasons set forth on the record during the hearing on April
23, 2019 and in this MEMORANDUM OPINION, the Court denied these
Motions by an ORDER entered on April 23, 2019 (ECF No. 91).

**BACKGROUND**

**A. General Factual Background**

In this medical malpractice case, John Kinlaw ("Kinlaw")
alleges that Defendants, Dr. Charles Nwaokocha ("Dr. Nwaokocha")

and Armor Correctional Health Services, Inc. ("Armor") (collectively, the "Defendants") failed properly to treat Kinlaw's broken finger, leading to permanent damage to the finger.[1] See Compl. ¶ 1-6 (ECF No. 1). At the time of the alleged malpractice, Kinlaw was incarcerated at Lunenburg Correctional Center ("LCC"). Id. ¶ 1. During the relevant time period, Dr. Nwaokocha was an employee of Armor, which contracted with the Virginia Department of Corrections to provide health care services at LCC. Id. ¶¶ 10, 19.

Kinlaw alleges that Dr. Nwaokocha committed medical malpractice by, inter alia: (1) delaying the treatment of his finger injury; (2) failing to properly stabilize the injury; and (3) failing to promptly refer him to a specialist. See id. ¶¶ 20-90. Kinlaw seeks compensatory damages (including pain and suffering and lost income); damages for lost earning potential; punitive damages; special damages; and costs and attorney's fees. Id. at 41-42.

### B. Background Relevant To The Motions

On April 25, 2018, the Court entered a SCHEDULING ORDER (ECF No. 15) establishing the default pretrial schedule for the case, "except to the extent amended or augmented by the terms of the Initial Pretrial Order issued after the pretrial conference or by

---

[1]    The Plaintiff has agreed to dismiss the case against January Price and Loretta Banks. See ECF No. 88.

any other Order." That SCHEDULING ORDER (ECF No. 15) included the Court's standard "Pretrial Schedule A," which, _inter alia_, provides rules pertaining to expert witnesses. See _id._ ¶ IV. It requires, _inter alia_, that "Local Rule 26 shall govern disclosure and discovery of experts and their reports" and that

> [u]nless the Court orders otherwise for good cause shown, expert witnesses and reports not disclosed as required by Fed. R. Civ. P. 26(a)(2) and (3) and the deadlines established herein shall not be allowed to testify or be admitted into evidence, as the case may be.

_Id._ Neither the SCHEDULING ORDER nor the Pretrial Schedule A were modified by the INITIAL PRETRIAL ORDER (ECF No. 24).

Thereafter, the Court entered an Order requiring, _inter alia_, that the "plaintiff shall serve expert disclosures under Fed. R. Civ. P. 26 on December 3, 2018; defendants shall serve responsive reports on January 4, 2019; the plaintiff shall serve the rebuttal report by January 15, 2019; and all expert depositions shall be concluded by January 30, 2019." ECF No. 26 ¶ 5. Then, by Order entered on December 4, 2018, the discovery schedule was modified to extend the close of discovery (including the deadline for expert depositions) to January 31, 2019. ECF No. 41. The Court then entered an AGREED ORDER (ECF No. 51) establishing various pretrial

deadlines. The trial date was continued to June 17–21, 2019.[2] ECF No. 48.

The basis of the Motions is the expert report and possible trial testimony of Kinlaw's expert witness, Michael J. Katz, M.D. ("Dr. Katz"). See, e.g., ECF No. 53; ECF No. 77. Kinlaw properly designated Dr. Katz as an expert witness and timely disclosed Dr. Katz's expert report (the "first report") to the Defendants on December 4, 2018. See Apr. 23 Hr'g Tr. at 8 (hereinafter, "Hr'g Tr.") (ECF No. 95). In response, the Defendants submitted their expert designations on January 4, 2019. Id. at 9. Dr. Katz was then deposed on January 25, 2019 (six days before the close of discovery). Id. Following his deposition, on the evening of January 31, 2019 (the last day of discovery), Kinlaw submitted a second expert report by Dr. Katz (the "second report"), which purported to clarify certain issues that arose at Dr. Katz's deposition six days earlier.[3] Id.; id. at 28–31.

In the Defendants' Motion to Exclude (ECF No. 52), the Defendants move to exclude testimony contained in, or alternatively to strike entirely, the second report. They argue that Dr. Katz's second report was untimely and was an improper

---

[2]    The trial date has since been continued until July 15–17, 2019. ECF No. 89.

[3]    Counsel for Kinlaw stated that the delay in filing the second report was due, in part, to the fact that Dr. Katz left on a vacation immediately after his deposition. Hr'g Tr. at 23–24.

4

supplementation of an expert report. In the Defendants' <u>Daubert</u>
Motion (ECF No. 76), the Defendants move to exclude Dr. Katz's
standard of care and causation opinions. Finally, largely assuming
that the Court would grant the Motion to Exclude and/or the <u>Daubert</u>
Motion (<u>i.e.</u> exclude entirely, or curtail significantly, Kinlaw's
primary expert witness), the Defendants moved for summary
judgment. ECF No. 73.

The parties fully briefed the Motions and the Court heard
oral argument on them on April 23, 2019. For the reasons stated
on the record on April 23, 2019, and as set forth below, the
Motions were denied. ECF No. 91.

## DISCUSSION

Although the several Motions present slightly different
issues, the nub of the Defendants' argument is that Kinlaw
improperly filed the second report of Dr. Katz. The second report,
argue the Defendants, was untimely and is an improper
supplementation of the initial report. As explained below, the
second report was neither untimely nor an improper supplementation
that violated Fed. R. Civ. P. 26. However, the fact that it was
provided so late in the discovery process made it nearly impossible
for the Defendants properly to respond to it. Accordingly, as set
forth below, the Court permitted the Defendants to re-depose Dr.
Katz "on all topics raised in the [second] report. Hr'g Tr. at 42.
These issues will be addressed in turn.

## A. Legal Framework

It is first necessary to set forth the legal framework necessary for deciding the Motions.

### a. Fed. R. Civ. P. 26

Fed. R. Civ. P. 26(a)(2) sets forth the general requirements that parties must disclose the identities of their expert witnesses and provide a written expert report. Fed. R. Civ. P. 26(a)(2)(B) details the requirements of the expert's written report, which includes "a complete statement of all opinions the witness will express and the basis and reasons for them." Id. (a)(2)(B)(i). And, Fed. R. Civ. P. 26(a)(2)(E) requires that the parties "supplement these [expert] disclosures when required under Rule 26(e)." See Sharpe v. United States, 230 F.R.D. 452, 456 (E.D. Va. 2005) (describing requirements of Rule 26, including duty to supplement).

Turning to Rule 26(e), it reads, in full:

**Supplementing Disclosures and Responses.**

**(1)** *In General*. A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:

> **(A)** in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

6

**(B)** as ordered by the court.

> **(2)** *Expert Witness.* For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends <u>both to information included in the report and to information given during the expert's deposition</u>. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

(emphasis added). In other words, the clear text of Rule 26(e) establishes that a party has a "duty to supplement," which extends both to information in the original expert report and to information given during the expert's deposition. Of course, supplementation does not mean that a party may submit a wholly new expert report or attempt to remedy "the incomplete or inadequate review performed" by an expert. See <u>Sharpe</u>, 230 F.R.D. at 462. However, supplementation is required "to add additional or corrective information." <u>Id.</u>

And, any such supplementation must be made "by the time the party's pretrial disclosures under Rule 26(a)(3) are due," which is "[u]nless the court orders otherwise. . .at least 30 days before trial." Fed. R. Civ. P. 26(a)(3)(B). The parties here agree that the relevant deadline set by the Court for such disclosures was January 31, 2019, the close of discovery. See ECF No. 41.

### b. Fed. R. Civ. P. 37

Assuming that a party violates the disclosure requirements of Fed. R. Civ. P. 26, discussed above, sanctions under Fed. R. Civ.

P. 37 could be available. For the purpose of the Motions, the relevant provision is Rule 37(c)(1), "Failure to disclose or supplement." In full, that section reads:

> ***Failure to Disclose or Supplement.*** If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> > **(A)** may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> >
> > **(B)** may inform the jury of the party's failure; and
> >
> > **(C)** may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).[4]

Fed. R. Civ. P. 37(c)(1); see Southern States Rack & Fixture v. Sherwin-Williams, 318 F.3d 592, 595-99 (4th Cir. 2003) (setting forth factor test to determine if "failure was substantially justified or is harmless"); Samsung Elecs. Co., Ltd. v. NVIDIA

---

[4]    These sanctions are: (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party. See Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi).

Corp., 314 F.R.D. 190, 195-96 (E.D. Va. 2016). If there is no violation of Fed. R. Civ. P. 26, then Fed. R. Civ. P. 37 sanctions do not come into play. See Samsung, 314 F.R.D. at 195-96 (the first step in determining whether to impose sanctions is to "determin[e] that a violation of a discovery order or one of the Federal Rules of Civil Procedure occurred").

**B. Analysis**

    **a. Motion to Strike**

In their Motion to Strike, the Defendants move to exclude Dr. Katz's testimony contained in the second report, or alternatively to strike the second report altogether. ECF No. 52. They argue that the second report was untimely and improperly supplemented the first report of Dr. Katz. The second report is, in essence, a wholly new expert report, Defendants argue. See ECF No. 53 at 5-9. That violates Fed. R. Civ. P. 26, they argue, and warrants the exclusion of Dr. Katz's testimony contained in the second report under Fed. R. Civ. P. 37 because Kinlaw's failure to properly disclose the second report was neither substantially justified nor harmless. Id.

Initially, it is clear from the text of Fed. R. Civ. P. 26 that the second report of Dr. Katz was technically a timely supplementation under Fed. R. Civ. P. 26(e). As discussed above, Rule 26(e) establishes that a party has a "duty to supplement," which applies both to information in the original expert report

and to information given during the expert's deposition. The supplementation must be made "by the time the party's pretrial disclosures under Rule 26(a)(3) are due," which is, "[u]nless the court orders otherwise. . .at least 30 days before trial." Fed. R. Civ. P. 26(a)(3)(B). The relevant deadline set by the Court for such disclosures here was January 31, 2019, the close of discovery. See ECF No. 41. And, the second report of Dr. Katz was provided to the Defendants on January 31, 2019. Hr'g Tr. at 9.

Instead, the key issue focused on by the Defendants is that the second report was an improper "supplementation" under Fed. R. Civ. P. 26(e). That is so, Defendants argue, because "Plaintiff has added new opinions in his Amended Report." ECF No. 53 at 5. As the Defendants see it, Dr. Katz, in the second report, added three new theories of liability that were not contained in the first report: (1) failure to send Kinlaw to the emergency room upon Dr. Nwaokocha's reading his x-ray; (2) failure to conduct clinical correlation regarding the x-ray report; and (3) failure to promptly splint Kinlaw's finger. Id. at 5-6. They argue that Campbell v. United States, 470 Fed. Appx. 153 (4th Cir. 2012) (unpublished), Samsung Elecs. Co., Ltd. v. NVIDIA Corp., 314 F.R.D. 190 (E.D. Va. 2016), and Sharpe v. United States, 230 F.R.D. 452 (E.D. Va. 2005), establish that the second report was an improper supplementation, and thus violates Fed. R. Civ. P. 26.

Accordingly, they move to strike the second report, or any testimony flowing therefrom, under Fed. R. Civ. P. 37.

Kinlaw urges that a close reading of the first report establishes that these theories of liability were set forth sufficiently in the first report. See ECF No. 60 at 12-15. Thus, the second report is not an improper supplementation. He also argues that the second report was necessary to respond to the fact that the Defendants tried to "corner Dr. Katz in some verbiage he used in his original report which says that he was relying on the orthopedic surgical standard of care." Hr'g Tr. at 28-31; ECF No. 53-1 at 17. Kinlaw argues that the Defendants sought to paint Dr. Katz as only being familiar with a surgical standard of care and that therefore, Dr. Katz was unable to opine on Kinlaw's injury. Hr'g Tr. at 28-29. Accordingly, Kinlaw argues that he submitted the second report to make clear what the first report already said and to clarify Dr. Katz's deposition testimony. Id. at 31.

First, Kinlaw is correct that the first report, although not a picture of clarity, did contain the opinions that the Defendants contend were added in the second report. Dr. Katz's first report opined, inter alia, that Dr. Nwaokocha "should have. . .referred [Kinlaw] to an orthopedic surgeon upon reviewing [the x-ray] results";[5] "the attention to proper care was lacking by Dr.

_____

[5]    It is true that the first report does not use the term "emergency room," an omission to which the Defendants ascribe

11

Nwoakocha"; that Dr. Nwoakocha "reported[ly]. . .state[d] that there was no urgency to the patient being seen"; and that the "patient at least should have been splinted immediately after review of the x-rays." See ECF No. 53-1 at 16-17. He further opined that "[t]he treatment provided to John Kinlaw at the Lunenburg Correctional Center in regard to his right fourth finger fracture does not meet the standard of care for fracture treatment of an intra-articular finger fracture." Id. at 16.

In sum, Dr. Katz's first report details significant delays in Kinlaw's treatment, a failure of Dr. Nwaokocha to recognize the significance of the injury, a failure of Dr. Nwaokocha to properly refer Kinlaw for the appropriate care, and a delay in splinting the finger. See id. at 15-16. Fairly read, the first report stands as an indictment of Dr. Nwaokocha's care of Kinlaw. In other words, although the second report did add more detail to the first report, it is certainly not the case that the second report contained new opinions. See ECF No. 53-3 at 17-20; see also Golden Nugget, Inc. v. Chesapeake Bay Fishing Co., L.C., 93 Fed. Appx. 530, 536 (4th Cir. 2004) (unpublished) ("We agree with the district court's conclusion that while GNI's theory of causation could have been

---

significance. See Hr'g Tr. at 33, 37-39. As counsel for Kinlaw argued, however, for a prisoner like Kinlaw, referral to the emergency room would have been the quickest way to get his injury before an orthopedic surgeon. Id. at 38. Dr. Nwaokocha did not make such a referral immediately following the injury.

articulated more definitively, it was generally disclosed in [the expert report]."

Second, the cases relied upon by the Defendants do not provide for a different outcome. In Campbell, the district court had excluded testimony of Campbell's expert witness pursuant to Fed. R. Civ. P. 37(c)(1) and the Fourth Circuit affirmed. See 470 Fed. Appx. at 155-57. Campbell "filed her expert designation. . .five days after the deadline set forth in the district court's scheduling order." Id. at 156. That late-filed report "failed to delineate the applicable standard of care, discuss the issue of causation, explain the factual basis for [the expert's] conclusions, or reveal the records [the expert] reviewed." Id. Campbell's attempt to supplement the expert report was rejected because the supplement "attempted to recast [the expert's] initial opinions so as to comply with the requirements of Rule 26(a)." Id. at 157.

On inspection, the facts of Campbell are quite dissimilar to this case. First, the initial expert designation and first report of Dr. Katz were timely made. See, e.g., Hr'g Tr. at 8. Second, although Dr. Katz was not as clear as he could have been in his first report, he provided an extensive summary of the records Dr. Katz reviewed, stated factual bases for his opinions, stated the standard of care, and described how the negligence of the Defendants caused Kinlaw's injuries. See ECF No. 53-1. In other

13

words, the first report is nothing like the expert report at issue in <u>Campbell</u>. And, as described above, Dr. Katz's second report did not "attempt[] to recast [Dr. Katz's] initial opinions," but rather was meant to address issues that arose at the deposition and to clarify the first report. 470 Fed. Appx. at 157. In sum, <u>Campbell</u> does not direct the Court's inquiry.

The same is true of <u>Samsung</u>. There, in the midst of trial, Samsung's expert witness "testified that, in forming his opinions, he had relied on images that were disclosed neither in his expert reports nor to counsel for either side." 314 F.R.D. at 195. Such a failure to disclose ran afoul of Fed. R. Civ. P. 26, as modified by the parties' agreed-upon Stipulated Discovered Order, which "provided: 'all materials generated by a testifying expert with respect to that person's work are exempt from discovery unless <u>relied upon</u> by the expert in forming any opinions in this litigation.'" <u>Id.</u> at 196 (emphasis in original). It did not matter in the Court's analysis that the parties were on notice that the expert's report "would disclose only some of the [data] upon which he relied." <u>Id.</u> at 198. The fact that the data was not disclosed when it should have been is what mattered. <u>See</u> <u>id.</u>

<u>Samsung</u> differs significantly from this case. First, the issue arose in the middle of trial, while the issue in this case arose several months before trial. Second, as discussed above, Dr. Katz's first report did opine on the issues about which the

14

Defendants claim were added in the second report, albeit not in the clearest possible way. See Golden Nugget, 93 Fed. Appx. at 536. Samsung is not on point.

Finally, Sharpe is also inapposite. There, the district court excluded the expert reports of two doctors because the doctors had filed "brief reports" that did not set forth opinions "supported by the required basis and reasons." 230 F.R.D. at 458. Nor had the experts "set forth what data or information that they relied upon in making these opinions." Id. The defendant had "advised the plaintiff of the problems with these reports [but] no remedial supplemental information [had] been provided." Id. at 459.

Finally recognizing the deficiencies in her report, the plaintiff in Sharpe orally moved to supplement the expert reports at a motions hearing. See id. at 461-62. The Court rejected this oral motion because: (1) the defendant had put the plaintiff on notice previously about the deficiencies in her expert reports; (2) the trial was the following month; (3) the plaintiff had provided no excuse for the inadequate disclosure; and (4) the plaintiff sought to "recast and rework [the initial expert opinions] so as to comply with the requirements of Rule 26(a)(2)(B) and withstand summary judgment." See id. at 461-63. As the Court concluded,

> the fundamental problem [with the experts' reports] does not reside in the language used or omitted in the reports; rather it is the

> revealed lack of certainty on the issue of
> causation. This [is] a foundational flaw in
> the plaintiff's case that cannot be overcome
> by allowing the plaintiff additional time to
> amend because in order to do so the opinions
> of [the experts] would have to effectively
> change.

Id. at 463. Unlike in this case, the experts in Sharpe, regardless
of any supplementation of the expert report, could not provide
proper opinions. In his 18-page first report, Dr. Katz provided a
detailed overview of his review of the Kinlaw's medical records
and his opinion. His report was nothing like the "brief reports"
in Sharpe. Accordingly, Sharpe does not require a different
outcome here.

The bottom line is this: a fair reading of Dr. Katz's first
report demonstrates that the second report did not add new opinions
or theories of liability. The first report could have been clearer,
but that in itself does not render the second report an improper
supplementation under Fed. R. Civ. P. 26(e). And, as the Court set
forth above, the second report was timely filed, albeit barely
(this timing issue will be addressed further below). Thus, there
is no Fed. R. Civ. P. 26 violation.

Even if the Court were to assume, however, that Dr. Katz's
second report violated Fed. R. Civ. P. 26, the Motion to Strike
the second report or the testimony therein is not warranted because
the violation was "substantially justified or is harmless." See
Fed. R. Civ. P. 37(c)(1); Southern States, 318 F.3d at 595-99;

<u>Bresler v. Wilmington Trust Co.</u>, 855 F.3d 178, 190–94 (4th Cir. 2017). To determine whether a failure to follow discovery rules is substantially justified or harmless, the Court must "be guided by the following factors:"

> (1) the surprise to the party against whom the evidence would be offered;
>
> (2) the ability of that party to cure the surprise;
>
> (3) the extent to which allowing the evidence would disrupt the trial;
>
> (4) the importance of the evidence; and
>
> (5) the nondisclosing party's explanation for its failure to disclose the evidence.

<u>Southern States</u>, 318 F.3d at 597. The first four factors relate to the "harmlessness exception," while the last factor relates to the "substantial justification exception."[6] <u>Id.</u>

The <u>Southern States</u> factors do not warrant striking the second report of Dr. Katz. <u>See</u> Hr'g Tr. at 41–42. To begin, it cannot be truly said that the Defendants were surprised by anything in the second report because the second report did not add new opinions or theories of liability. At most, the second report went into more detail and provided clarity on the first report and Dr. Katz's

---

[6]     In <u>Southern States</u>, the district court had excluded (and the Fourth Circuit affirmed) a new expert opinion that was disclosed in the midst of trial. However, the district court did permit the expert to testify regarding opinions that the expert had expressed in a supplemental report that was disclosed only a week before trial. <u>See</u> 318 F.3d at 594-95.

17

subsequent deposition testimony. But see Southern States, 318 F.3d at 598 ("surprise factor" satisfied when new opinion offered during trial). The "surprise factor" does not support striking Dr. Katz's second report.

Secondly, any surprise (there is none) can be easily cured. When Kinlaw provided the Defendants with the second report of Dr. Katz on January 31, 2019, the trial in the case was scheduled for June 17-21, 2019, almost six months away. See ECF No. 48 ¶ 1. In other words, this is not a case where disclosure occurred during trial. See Southern States, 318 F.3d at 598. And, when the Court heard argument on and decided the Motions, it was about two months before trial. It is true, however, that the second report was provided on the last day of discovery. As set forth below, the Defendants are permitted to re-depose Dr. Katz, which will allow adequate time for the alleged surprise to the Defendants to be cured. See Bresler, 855 F.3d at 194 (two months between disclosure of late-filed expert report and trial date did not affect the defendant's "ability to conduct its defense in any material respect"). The "cure" factor does not support striking Dr. Katz's second report.

Third, there is no "disruption to the trial" because the trial was six months away when the second report was disclosed and the

18

hearing on the Motions was held two months before trial. This factor does not support striking the second report of Dr. Katz.[7]

Fourth, the second report is important to both sides. Of course, "'importance of evidence' cannot, itself save improperly disclosed evidence from being found unjustified or non-harmless." Samsung, 314 F.R.D. at 197 n.6. However, even assuming that the second report is more important to Kinlaw, on balance, the remaining Southern States factors do not support striking the second report. See Bresler, 855 F.3d at 194 (late-disclosed evidence was more important to the late-disclosing party, but other Southern States factors did not support striking the evidence).

Finally, Kinlaw's explanation does not support striking the second report. As explained above, counsel for Kinlaw explained that, during Dr. Katz's deposition, counsel realized that the Defendants were trying to corner Dr. Katz into a certain position about the standard of care. See Hr'g Tr. at 28-31. Recognizing that the combination of the first report and Dr. Katz's deposition testimony were not as precise as they could have been—and trying to avoid the Defendants' trap—Kinlaw submitted the second report. Id.; id. at 41-42. That explanation is reasonable.

---

[7]    The trial in this case has been moved from June to July, but that was largely a factor of the schedules of counsel. It was the Court's intention to only move the trial by about one week. See Hr'g Tr. at 50-51.

Even assuming that there is a Rule 26 violation (which there is not), the Southern States factors, taken as a whole, point to the conclusion that the violation would be "substantially justified or is harmless." See Southern States, 318 F.3d at 595-99; Fed. R. Civ. P. 37(c)(1).

For the foregoing reasons, the Court denied the Defendants' MOTION TO EXCLUDE TESTIMONY CONTAINED IN THE AMENDED EXPERT REPORT OF MICHAEL J. KATZ, MD, OR, IN THE ALTERNATIVE, MOTION TO STRIKE THE AMENDED EXPERT REPORT OF MICHAEL J. KATZ, MD (ECF No. 52).

### b. Appropriate Remedy

As set forth above, Dr. Katz's second report was not untimely by the letter of Fed. R. Civ. P. 26(e), nor was it an improper supplementation under that Rule. Nonetheless, given that discovery closed on January 31, 2019 and the second report was submitted on the evening of January 31, 2019, the Defendants had no realistic opportunity to respond to Dr. Katz's second report. Thus, while there may not have been a technical violation of Fed. R. Civ. P. 26, there was, in essence, a functional one. Under Fed. R. Civ. P. 37, district courts "enjoy broad discretion to select an appropriate remedy in light of the totality of the circumstances." Samsung, 314 F.R.D. at 200 (citing Southern States, 318 F.3d at 593 and Fed. R. Civ. P. 37(c)(1)).

Because of the timing of the second report, counsel for Kinlaw proposed giving the Defendants an opportunity to re-depose Dr.

Katz (with costs borne by counsel for Kinlaw) on "narrow issues" raised in the second report. See ECF No. 60 at 17; Hr'g Tr. at 25. That is a reasonable solution to deal with the timing of the disclosure of the second report and allow the Defendants to properly respond to Dr. Katz. However, it is not appropriate to restrict the subject matter upon which Defendants can re-depose Dr. Katz. Accordingly, as set forth on the record during the April 23, 2019 hearing, the Court has permitted that the Defendants have the opportunity to re-depose Dr. Katz "on all topics raised in the [second] report." Hr'g Tr. at 42. "The cost of that deposition will be on plaintiff's counsel," which includes the "cost of deposing the witness" and "up to four hours of preparation time" for the deposition. Id. at 42-43. Further, the Defendants represented to the Court that there were several individuals who they did not depose in perspective of Dr. Katz's first report. Id. at 16. If, following the re-deposition of Dr. Katz, the Defendants needed to depose these additional individuals, counsel for Kinlaw will bear the costs of such depositions. See id. at 43.

   c. **Daubert** Motion

   The Defendants also filed the Daubert Motion (ECF No. 76) in which they argued that: (1) Dr. Katz's standard of care opinions should be excluded to the extent that they were not contained in the first report; (2) that the "orthopedic surgical standard of care" about which Dr. Katz opined in the first report is irrelevant

to this case; (3) that Dr. Katz's standard of care opinion in the first report is too vague to assist the jury; and (4) that Dr. Katz's causation opinions contained in the first report are inadmissible for various reasons. See generally ECF No. 77. Kinlaw argues that the clarification provided by the second report establishes that Dr. Katz is competent to testify on the standard of care and causation. See generally ECF No. 80.

At bottom, the Defendants' argument on the Daubert Motion largely rises and falls with the ruling on the Motion to Exclude (ECF No. 52). As discussed, the Court denied the Motion to Exclude (ECF No. 52), but permitted the Defendants to re-depose Dr. Katz. Given that the Defendants' argument for the Daubert Motion was premised on an argument that the Court rejected (i.e. that the second report, and testimony therefrom, be excluded), the DEFENDANTS' RENEWED MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S STANDARD OF CARE AND CAUSATION EXPERT, MICHAEL J. KATZ (ECF No. 76) was also denied.[8]

### d. Motion for Summary Judgment

Finally, based on the rulings on the Motion to Exclude (ECF No. 52) and the Daubert Motion (ECF No. 76), and in perspective of

---

[8] If, following the re-deposition of Dr. Katz, the Defendants determine that a similar Motion is again warranted, nothing in the parties' new AGREED ORDER adjusting the pretrial schedule prevents such a Motion from being filed. See ECF No. 99.

the additional discovery to be conducted in the case, the Defendants agreed that "[i]t makes sense to wait [on the Motion for Summary Judgment] until later to further develop the facts." Hr'g Tr. at 49. Accordingly, the DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 73) was denied as moot and without prejudice to its refiling upon the completion of the additional discovery in the case.[9] <u>See</u> ECF No. 91.

---

[9]     Pursuant to the new AGREED ORDER (ECF No. 99), summary judgment motions must be filed by May 31, 2019.

**CONCLUSION**

For the reasons set forth on the record during the hearing on April 23, 2019 and in this MEMORANDUM OPINION, the Defendants' MOTION TO EXCLUDE TESTIMONY CONTAINED IN THE AMENDED EXPERT REPORT OF MICHAEL J. KATZ, MD, OR, IN THE ALTERNATIVE, MOTION TO STRIKE THE AMENDED EXPERT REPORT OF MICHAEL J. KATZ, MD (ECF No. 52); the DEFENDANTS' RENEWED MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S STANDARD OF CARE AND CAUSATION EXPERT, MICHAEL J. KATZ (ECF No. 76); and the DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 73) were denied by the ORDER entered on April 23, 2019 (ECF No. 91).

It is so ORDERED.

_____ /s/ _____ *REP*

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: May 29, 2019

24