IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOHN KINLAW,

    Plaintiff,

v.                                          Civil Action No. 3:17-cv-772

DR. CHARLES NWAOKOCHA,
et al.,

    Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on the DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT (the "Motion") (ECF No. 103). The Motion has been denied (ECF No. 122), and this MEMORANDUM OPINION sets forth the reasons for doing so.

**BACKGROUND**

**A. General Factual Background**

In this medical malpractice case, John Kinlaw ("Kinlaw") alleges that Defendants, Dr. Charles Nwaokocha ("Dr. Nwaokocha") and Armor Correctional Health Services, Inc. ("Armor") (collectively, the "Defendants") failed properly to treat Kinlaw's broken finger, leading to permanent damage to the finger. See Compl. ¶ 1-6 (ECF No. 1). At the time of the alleged malpractice, Kinlaw was incarcerated at Lunenburg Correctional Center ("LCC"). Id. ¶ 1. During the relevant time period, Dr. Nwaokocha was an employee of Armor, which contracted with the Virginia Department

of Corrections to provide health care services at LCC. Id. ¶¶ 10, 19.

Kinlaw alleges that Dr. Nwaokocha committed medical malpractice by, inter alia: (1) delaying the treatment of his finger injury; (2) failing to properly stabilize the injury; and (3) failing to promptly refer him to a specialist. See id. ¶¶ 20-90. Kinlaw seeks compensatory damages (including pain and suffering and lost income); damages for lost earning potential; and punitive damages. Id. at 41-42.

**B. Background Relevant To The Motion**

This is the second time that the Court has been asked to consider a MOTION FOR SUMMARY JUDGMENT by the Defendants. Previously, Defendants had filed DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 73), which was denied in perspective of additional discovery permitted in the case. See Mem. Op. at 22-23 (ECF No. 100). Following an additional deposition of Kinlaw's expert witness, Dr. Michael Katz ("Dr. Katz"), the Defendants once again moved for summary judgment. The parties fully briefed the Motion, and the Court heard oral argument on it on June 26, 2019.

Following the June 26, 2019 hearing, the Court issued an ORDER denying the Motion as to: (1) Dr. Nwaokocha on COUNT I (ordinary negligence), COUNT II (gross negligence), and COUNT III (willful and wanton negligence) of the Complaint; (2) Dr. Nwaokocha on Kinlaw's request for punitive damages; and (3) Armor on the

2

ordinary negligence (COUNT I) portion of COUNT IV of the Complaint. ECF No. 122. The Court reserved ruling on several portions of the Motion until the Final Pretrial Conference. See id.

During the July 2, 2019 Final Pretrial Conference, counsel for Kinlaw represented that he was withdrawing claims of gross negligence, willful and wanton negligence, and punitive damages against Armor. See ECF No. 130. Further, Kinlaw withdrew his claim for special damages against both Dr. Nwaokocha and Armor. See id. Accordingly, the Court denied the DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT (ECF No. 103) as to these claims as moot. ECF No. 130.

Then, on July 11, 2019, counsel for Kinlaw represented that he was dropping COUNT II (gross negligence) and COUNT III (willful and wanton negligence) against Dr. Nwaokocha. See ECF No. 151. Accordingly, for purposes of this MEMORANDUM OPINION, the only claims of the Complaint remaining are: (1) COUNT I (ordinary negligence) against Dr. Nwaokocha; (2) COUNT IV (respondeat superior) against Armor for the ordinary negligence alleged against Dr. Nwaokocha in COUNT I;[1] and (3) punitive damages against

---

[1] The Defendants agree that, if Dr. Nwaokocha is found liable on COUNT I, then Armor is also liable under a respondeat superior theory for that negligence under COUNT IV. See, e.g., Apr. 23 Hr'g Tr. at 45-46 (ECF No. 95) ("For the simple negligence, we didn't argue that there would be no vicarious liability if simple negligence was proven against Dr. Nwaokocha, because I think the case law is strongly in favor of finding that treating physicians are acting within the scope of their employment."); ECF No. 151.

Dr. Nwaokocha. This MEMORANDUM OPINION sets forth the reasons for denying the Motion as to COUNT I and the claim for punitive damages against Dr. Nwaokocha.

**DISCUSSION**

The Defendants' argument for summary judgment on COUNT I is that the causation opinion of Dr. Katz must be excluded. That argument was rejected, and, accordingly, summary judgment was denied as to COUNT I. And, on Kinlaw's claim for punitive damages against Dr. Nwaokocha, the evidence viewed in the light most favorably to Kinlaw was sufficient to submit this issue to the jury. Thus, summary judgment was denied on that claim too.

**A. Legal Standard for Summary Judgment**

Motions for summary judgment are governed by the following well-established principles:

> Federal Rule of Civil Procedure 56(a) instructs that a court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists under Rule 56 "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
>
> When evaluating a motion for summary judgment under Rule 56, any disputed "facts must be viewed in the light most favorable to the

---

Because Armor's liability on COUNT IV flows automatically if Dr. Nwaokocha is found liable on COUNT I, it is unnecessary to further discuss COUNT IV in this Opinion.

4

> nonmoving party." Scott v. Harris, 550 U.S. 372, 380 (2007). In general, the "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" and "demonstrat[ing] the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Benedict v. Hankook Tire Co. Ltd., 286 F. Supp. 3d 785, 789 (E.D. Va. 2018); United States v. Woody, 220 F. Supp. 3d 682, 685-86 (E.D. Va. 2016). "Once the moving party properly files and supports its motion for summary judgment, the opposing party must show that a genuine issue of fact exists." Milbourne v. JRK Residential Am., LLC, 92 F. Supp. 3d 425, 427 (E.D. Va. 2015).

### B. Analysis

#### 1) COUNT I - Ordinary Negligence

COUNT I of the Complaint alleges ordinary negligence against Dr. Nwaokocha for his treatment of Kinlaw's injury. The Defendants rely on one argument in support of the DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT (ECF No. 103) on COUNT I. The argument is that, because Dr. Katz's causation opinion must be excluded (and Kinlaw has proffered no other opinion on causation), Kinlaw's negligence claim fails as a matter of law.[2] See ECF No. 110 at 18.

---

[2] The exclusion of Dr. Katz's causation opinion was the subject of a separate motion, DEFENDANTS' MOTION TO EXCLUDE THE CAUSATION OPINIONS OF PLAINTIFF'S EXPERT, MICHAEL J. KATZ (ECF No. 101), which the Court separately denied. See ECF No. 123; ECF No. 167.

5

It is of course true that to make out a prima facie medical malpractice claim under Virginia law, Kinlaw is required to prove that Dr. Nwaokocha's negligence proximately caused his injuries. See, e.g., Dixon v. Sublett, 809 S.E.2d 617, 620-21 (Va. 2018) (plaintiff's failure to produce evidence of causation required a jury verdict for medical malpractice to be reversed); Brown v. Koulizakis, 331 S.E.2d 440, 446 (Va. 1985) ("In medical malpractice cases, as in other negligence actions, the plaintiff must establish not only that the defendant violated the applicable standard of care, and was therefore negligent, he must also sustain the burden of showing that the negligent acts constituted a proximate cause of the injury or death.").

Here, Kinlaw has designated Dr. Katz as his causation expert. The Defendants have twice tried to exclude Dr. Katz's opinions, recognizing, perhaps, that striking Dr. Katz would be case-dispositive. The Court has previously denied the DEFENDANTS' MOTION TO EXCLUDE THE CAUSATION OPINIONS OF PLAINTIFF'S EXPERT, MICHAEL J. KATZ (ECF No. 101) by an ORDER on June 27, 2019 (ECF No. 123) and MEMORANDUM OPINION (ECF No. 167). Because the Defendants' Motion on COUNT I rises and falls on the exclusion of Dr. Katz's causation opinion, see June 26 Hr'g Tr. at 34-35 (ECF No. 126), the Motion was denied as to COUNT I.[3]

---

[3] Because the Court has held that the causation opinion of Dr. Katz is admissible, it is unnecessary to address Kinlaw's

6

## 2) Punitive Damages Against Dr. Nwaokocha

As discussed above, Kinlaw only pursues punitive damages against Dr. Nwaokocha. See ECF No. 130. The Defendants raise two arguments in support of granting the Motion on punitive damages against Dr. Nwaokocha. They first argue that "Plaintiff's claim for punitive damages is ripe for summary judgment because his underlying substantive claims all merit dismissal." ECF No. 110 at 19. That argument fails in perspective of the denial of the Motion on COUNT I, as discussed above.

Second, the Defendants argue that punitive damages are unavailable against Dr. Nwaokocha because such damages require "factual allegations sufficient to establish that the defendant's conduct was willful or wanton," which are not present here. ECF No. 110 at 19-20 (quoting Woods v. Mendez, 574 S.E.2d 263, 268 (Va. 2003)). Defendants also cite to Burruss v. Hines, 26 S.E. 875, 877 (Va. 1897) for the proposition that "[a] tort committed by mistake, in the assertion of a supposed right, or without any actual wrong intention, and without such recklessness or negligence as evinces malice or conscious disregard of the rights of others, will not warrant the giving of damages for punishment, where the doctrine of such damages prevails."

---

alternative argument that no expert opinion on causation is required in this case. See ECF No. 109 at 19-22.

As set forth in Woods v. Mendez, a common law punitive damages claim in Virginia requires "factual allegations sufficient to establish that the defendant's conduct was willful or wanton," or, in other words, that the action was taken "in conscious disregard of another's rights, or with reckless indifference to consequences with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another."[4] 574 S.E.2d 263, 268 (Va. 2003) (citations omitted); Allstate Ins. Co. v. Wade, 579 S.E.2d 180, 187 (Va. 2003); Johnson v. Hugo's Skateway, 974 F.2d 1408, 1418 (4th Cir. 1992) (en banc) (holding that federal courts applying Virginia law on punitive damages must instruct the jury to consider certain factors). Each case must be reviewed on its own facts to determine if there is sufficient evidence to support a punitive damages award. See Woods, 574 S.E.2d at 268.

As set forth above, at the summary judgment stage, any disputed facts must be construed in the light most favorable to

---

[4] The Court does not view Kinlaw's dismissal of COUNT II (gross negligence) and COUNT III (willful and wanton negligence) as changing the analysis on punitive damages. In Woods, for example, there did not appear to be a separate Count for "gross negligence" or "willful and wanton negligence," but rather a Count for negligence and two Counts for punitive damages. 574 S.E.2d at 265. This case is a negligence case with evidence (taken in the light most favorably to the non-moving party, Kinlaw) that Dr. Nwaokocha acted in willful and wanton disregard of Kinlaw's rights, and oppressively. That does not change if there is no longer a Count alleging willful and wanton negligence as a separate cause of action.

Kinlaw, the non-moving party. See, e.g., Scott v. Harris, 550 U.S. 372, 380 (2007). In performing this assessment on Kinlaw's punitive damages claim against Dr. Nwaokocha, there is certainly evidence from which a jury could find that Dr. Nwaokocha's conduct in treating Kinlaw was willful and wanton, or that Dr. Nwaokocha acted "in conscious disregard of [Kinlaw's] rights, or with reckless indifference to consequences with [Dr. Nwaokocha] aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to [Kinlaw]." See Woods, 574 S.E.2d at 268.

Kinlaw points to several pieces of evidence from which a jury could conclude that Dr. Nwaokocha disregarded Kinlaw's broken finger, intentionally delayed care, and acted callously with respect to Kinlaw's care. For example, after his accident, Kinlaw requested to be sent to the emergency room, but Dr. Nwaokocha denied the request. See Kinlaw Dep. at 54-55 (ECF No. 81-1). There is also evidence that Dr. Nwaokocha ordered an initial appointment for 17 days after the injury occurred, and that the appointment was only moved sooner because Kinlaw and his parents expressed concern about the condition of Kinlaw's finger, see id. at 64-67; that during his first visit with Dr. Nwaokocha, 11 days after the injury, the doctor "glance[d] at [his hand]" and never examined it in detail, see id. at 80; that Dr. Nwaokocha ordered the nurses to "flatten[] [Kinlaw's] hand against this board and pushed it down

9

really hard and it really hurt and they then wrapped it with an Ace bandage very tight, which was extremely painful," see id. at 78; and that, when Kinlaw saw Dr. Nwaokocha again a few weeks later, the doctor "stormed out of the room" when Kinlaw suggested that his injury was worse than Dr. Nwaokocha believed. Id. at 82-83.

Kinlaw also testified at his deposition that Dr. Nwaokocha specifically told Kinlaw that "if he wanted to punish me, that he would just have me sent to MCV. . .because MCV you're looking at least a year to get an MRI and then he laughed and he said to see an orthopedic surgeon, he says – I mean, basically, it's not going to happen." Id. at 83. This interaction with Dr. Nwaokocha suggested to Kinlaw that he could not "openly discuss medical issues with [Dr. Nwaokocha] because if he got mad at me, he could punish me and deny me medical attention." Id. at 84.

Although Dr. Nwaokocha eventually sent Kinlaw for imaging and Kinlaw eventually had surgery, during the key time period immediately following the injury, Kinlaw's version of events is that Dr. Nwaokocha significantly delayed care and that the doctor acted with conscious disregard for Kinlaw's health. This is evidenced, prominently, by Kinlaw's testimony that Dr. Nwaokocha ordered the nurses to perform a painful (and, as Kinlaw argues, improper) splinting of his finger, and that Dr. Nwaokocha got angry at Kinlaw when Kinlaw spoke up about his care. This is intentional

10

conduct by Dr. Nwaokocha that a reasonable jury could find was done "with reckless indifference to consequences with [Dr. Nwaokocha] aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to [Kinlaw]." Woods, 574 S.E.2d at 268.

The Defendants dispute many of the factual allegations above. It was for the jury to determine which side it ultimately believed, and not for the Court to decide on summary judgment. At the summary judgment stage, the evidence construed most favorably to Kinlaw required that the Motion be denied on the punitive damages claim by Kinlaw against Dr. Nwaokocha.

## CONCLUSION

For the reasons set forth above, the DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT (ECF No. 103) was denied as to COUNT I and COUNT IV, and the punitive damages claim against Dr. Nwaokocha.

It is so ORDERED.

/s/ *R E P*

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: July 19, 2019

11